CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 16 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RODNEY LEON LEWIS, )
    Plaintiff, )   Civil Action No. 7:08-cv-00400
)
v. )   **MEMORANDUM OPINION**
)
ROANOKE COUNTY/SALEM JAIL, )
et. al., )   By: Hon. James C. Turk
    Defendants. )   Senior United States District Judge

Plaintiff Rodney Leon Lewis, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Lewis alleges that jail officials at the Roanoke County/Salem Jail ("the jail") have violated his constitutional rights by not respecting his privacy, discontinuing him from his position as a "trusty,"[1] and depriving him of adequate medical care. He seeks monetary damages for pain, suffering, and humiliation. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[2]

### I.

Lewis's allegations and submissions put forth the following sequence of facts on which his claims are based. On June 3, 2008, Lewis put a towel over the window portion of his cell door, so that he could have some privacy while using the toilet. Deputy Cannon came into the cell, ripped the towel off the door, "cussed out" Lewis, and told him that she would write him up. Lewis

---

[1] The term "trusty" is used in the prison or jail context in reference to a prisoner regarded by prison authorities as trustworthy and given special privileges. See Baxter v. Lewis, 421 F.Supp. 504 (W.D. Va. 1976) (Dalton, J.). It is clear from the documentation that Lewis submits with his claims that as a trusty at the jail, he was assigned work responsibilities as well as privileges. Therefore, the court construes his complaint as raising a claim that he was wrongfully discontinued from his prison job as a trusty. In any event, there is no right constitutional right to trusty status. See Rosson v. Weatherholtz, 405 F. Supp. 48, 49-50 (W.D. Va. 1975) (Dalton, J.).

[2] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

complained that the deputies did not take other inmates' towels down off the shower doors. After this incident, Lewis was "put off trusty" at the jail.

Lewis has a history of heart trouble and other medical problems. On December 18, 2007, his heart rate was so elevated that the jail's medical staff sent him back to his cell to lie down. Lewis called his wife, who is a nurse, and she called the jail, asking that Lewis receive other medical attention for his symptoms. Lewis claims that he was "having a heart attack." The next day Lewis was sent to Carilion Roanoke Memorial Hospital, and two days later, his heart "gave up" on him. He had stints placed in his heart and now takes 12-13 different medication. After this incident, Lewis repeatedly put in medical request forms, asking to be examined by a cardiologist. Jail officials scheduled him to be examined by the jail's physician in June 2008. However, before this doctor visit occurred, on June 19, 2008, Lewis put in a medical slip, stating that he was having chest pain and his arm was numb. Officials transported him to the hospital again, where he received extensive evaluation and treatment. Lewis believes that if jail officials had arranged for him to have a followup visit with a cardiologist after his hospital visit in December 2007, he would not have had the heart problems that he had in June 2008. He claims that as a result of the June 2008 heart trouble, he now cannot work or lift anything heavier than twenty pounds.

## II.

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Upon review of the complaint, the court cannot find that Lewis's allegations state any claim of constitutional proportions actionable under § 1983.

As a preliminary matter, Lewis cannot maintain his action against the jail as a defendant, since local jails are not "persons" subject to suit under 42 U.S.C. §1983. See McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890 (E.D. Va. 1992). Lewis does name individual jail officials

2

as defendants as well, and these individuals are subject to suit under § 1983. However, Lewis does not allege facts stating any § 1983 claim.

### A. Privacy

Imprisoned felons have very limited rights to privacy while incarcerated:

> Persons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. **When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons.**

Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981) (emphasis added). See also Turner v. Safley, 482 U.S. 78, 89 (1987) (prison regulation that impinge on inmates' constitutional rights are valid if reasonably related to legitimate penological interests). A jail policy of prohibiting inmates to cover their cell windows, even when using the toilet, serves legitimate jail interests in ensuring the safety of the inmate within the cell. See MacDonald v. Angelone, 69 F. Supp. 787 (E.D. Va. 1999) (finding that jail policy prohibiting inmates from covering cell window even while using toilet, was rationally related to legitimate state interest such that it did not violate inmate's right to privacy). In any event, an inmate may not recover monetary damages for emotional distress absent a showing of physical injury. See Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559 (W.D. Va. 2000)(finding that inmate was barred under 42 U.S.C. § 1997e(a) from recovery money damages for humiliation arising from lack of shower curtain).

Applying Lee, the court concludes that Deputy Cannon did not violate the plaintiff's constitutional rights by removing the towel from his door and entering his cell when he was on the toilet. The court can easily conceive of important security interests furthered by both of her actions. First, without entering the cell, she could not do her job of ensuring his safety, because the towel obscured her view of the cell. Lewis could have been trying to commit suicide or could have suffered a medical condition requiring immediate attention. Second, removing the towel furthered her ability to do her job in maintaining security. Finally, the only personal injury Lewis alleges from

3

the incident is humiliation. This court has held that § 1997e(a) bars inmates from recovering monetary damages for such emotional injuries as humiliation caused by loss of privacy, absent physical injury. As Lewis fails to allege suffering any physical injury related to the incident, he cannot recover any damages for Deputy Cannon's actions. The court will dismiss his privacy claim, pursuant to § 1915A, for failure to state a claim.

**B. Prison Job**

Inmates have no constitutional right to job opportunities while incarcerated. See, e.g., Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980). Because inmates have no independent constitutional right to a prison job, prison officials may generally terminate an inmate from his job for any reason without offending federal due process principles. See Bulger v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995). Courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest. See, e.g., Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir.1989) (holding that inmates have no protected property interest in continuing in work-release program); Adams v. James, 784 F.2d 1077, 1079 (11th Cir.1986) (stating that assignment to job as law clerk does not invest inmate with a property interest in continuation as such); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980) (holding that prisoner's expectation of keeping prison job does not amount to a property interest subject to due process protection).

Under these principles, the allegations in the complaint do not state any constitutional claim. Lewis did not have a constitutionally protected right to maintain his job as a trusty at the jail. Hence, his loss of the job did not violate his constitutional rights. Perhaps he is attempted to show that Deputy Cannon retaliated against him for the towel incident by causing him to lose his trusty position. However, as he fails to allege that she was motivated by his exercise of a constitutionally protected right, he fails to state any § 1983 retaliation claim. American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (finding that retaliation by a public official for the exercise of a constitutional right is actionable under § 1983). The claim concerning loss of trusty

4

status will, therefore, be dismissed without prejudice, pursuant to § 1915A, for failure to state a claim.

### C. Medical Treatment

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional violation in this context involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999); Sheldon v. C/O Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Moreover, mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

The Fourth Circuit Court of Appeals has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.; Smith v. Berry, 985 F.2d 180, 184 (4th Cir. 1993) (affirming directed verdict for prison guards not in position to "act meaningfully" with regard to inmate's medical needs).

5

The court cannot find any indication that anyone at the jail acted with indifference to Lewis's medical needs. The court will assume for purposes of this opinion that Lewis has a serious medical need for treatment of his heart condition. It is clear from his allegations and submissions, however, that he has received extensive treatment for his medical needs while at the jail. On December 18, 2007, when Lewis had such a high heart rate, no one ignored him. It is clear that the medical staff examined him, measured his heart rate and blood pressure, and made a medical judgment that he should lie down and rest. He does not allege any facts indicating that any jail medical personnel or other staff knew from his measurable symptoms that he was having a heart attack. Indeed, their actions indicate just the opposite. The very next day, jail officials got Lewis to the hospital, where he received extensive treatment, as documented by the medical records submitted as part of his complaint. Under § 1983, this court cannot second guess the medical judgments that Lewis did not require immediate treatment on December 18.

Similarly, Lewis's submissions cannot support a claim that jail personnel acted with deliberate indifference to his medical needs after his return from the hospital. He alleges that he made repeated requests, between December and June, to see a cardiologist. However, he is not entitled to the medical treatment that he desires, but rather only to the treatment that his medical providers at the jail determine is necessary, in their medical judgment. Not even the most experienced physician or nurse can predict when a heart attack is about to occur. Lewis does not allege any specific symptoms that he made known to defendants from which they should have known that his heart problems were worse. In June, even before he had another heart incident, medical personnel had scheduled him to see the jail doctor, who could then determine whether he needed to see a specialist. Moreover, Lewis does not allege any other specific treatment that medical staff could have provided between December and June that would have prevented the problems he suffered in June 2008. Furthermore, the nonmedical officials he has named could rightfully rely on the medical staff's judgment that no additional treatment was necessary during that period, based on his current symptoms as known to them. Because Lewis fails to demonstrate that any of the

6

Case 7:08-cv-00400-JCT-mfu   Document 5   Filed 07/16/08   Page 6 of 7   Pageid#: 115

defendants knew of an immediate need for different medical treatment to which they failed to respond in a reasonable manner, the court will dismiss his medical claims without prejudice, pursuant to § 1915A.

At the most, Lewis may allege facts stating (although not proving) some claim of medical malpractice. Such claims are not independently actionable under § 1983, and the court declines to exercise supplemental jurisdiction over any state law claims, pursuant to 28 U.S.C. § 1367(c). The court will dismiss these claims without prejudice. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 16th day of July, 2008.

/s/ James C. Turk
Senior United States District Judge

7

Case 7:08-cv-00400-JCT-mfu   Document 5   Filed 07/16/08   Page 7 of 7   Pageid#: 116